AO 91 (Rev. 11/82)

**CRIMINAL COMPLAINT**

ORIGINAL

LODGED

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br><br>TRAMION CARTER | DOCKET NO.<br>ED17-0137M<br><br>MAGISTRATE'S CASE NO.<br><br>FILED<br>CLERK, U.S. DISTRICT COURT<br>APR - 5 2017<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ DEPUTY |
|---|---|

2017 APR -5

CLERK U.S. DISTRICT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

Complaint for violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE SHERI PYM | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Riverside, California |
|---|---|---|

| DATE OF OFFENSE<br>April 4, 2017 | PLACE OF OFFENSE<br>San Bernardino County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II)]

On or about April 4, 2017, in San Bernardino County, within the Central District of California, defendant TRAMION CARTER, knowingly and intentionally possessed with intent to distribute at least five kilograms or more, that is, approximately 11.839 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii)(II).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:  N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**ERIC FUCHS**<br><br>OFFICIAL TITLE<br>Postal Inspector - USPIS |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1] | DATE<br>April 5, 2017 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Victoria A. Degtyareva x17635        REC: Detention

## AFFIDAVIT

I, Eric Fuchs, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against TRAMION CARTER ("CARTER") for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II) (Possession with Intent to Distribute Cocaine).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND FOR POSTAL INSPECTOR ERIC FUCHS

3.    I am a Postal Inspector with the U.S. Postal Inspection Service ("USPIS") and an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code.  I empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4.    I have been employed as a Postal Inspector with USPIS since May 2007.  I am currently assigned to the USPIS Los

1

Angeles Division, San Bernardino Domicile, Prohibited Mailing Narcotics Team ("PMN") and Parcel Task Force ("PTF"), which are responsible for investigating drug-trafficking organizations that use parcels to transport and distribute illegal drugs and/or drug-sale proceeds. I am also currently working with the Riverside Safe Streets Task Force ("SSTF"), which is comprised of law enforcement officers from the San Bernardino County Sheriff's Department, the Federal Bureau of Investigation ("FBI"), and the Riverside Police Department Narcotics Unit.

5.    Prior to my employment with the USPIS, I was a Special Agent with the U.S. Secret Service from June 1999 until May 2007. From 1994 through 1999, I was a full-time sworn police officer in the Commonwealth of Pennsylvania.

6.    I have received training in the investigation of drug-trafficking using United States Postal Service ("USPS") mail. As part of my law enforcement duties, I have conducted and assisted in several parcel investigations that have resulted in the arrest of individuals who have received and distributed illegal drugs, as well as the seizure of illegal drugs and drug-sale proceeds.

7.    I have received instructions in the identification, collection, and preservation of evidence, photography, latent print collection, and crime-scene investigations. Furthermore, I have received specific law enforcement training from various academies, including the Allegheny County Police Academy, Pittsburgh, Pennsylvania; Federal Law Enforcement Training Center, Brunswick, Georgia; the U.S. Secret Service Academy,

Beltsville, Maryland; the USPIS Training Academy, Potomac, Maryland; and various subsequent post-academy training through the above agencies.  I have a Bachelor of Science Degree in Administration of Justice from Pennsylvania State University.

8.    I have completed thousands of hours of criminal investigations, including compiling information, interviewing victims, witnesses, and suspects, and collecting evidence to support the filing of criminal complaints.  I have worked with other experienced state and federal law enforcement officers and supervisors and have gained valuable knowledge and experience from them.  My work has involved preparing and assisting in the planning and service of numerous search warrants, including warrant for a GPS tracking device on a car.  I have testified in federal court and state superior courts in relation to both misdemeanor and felony offenses.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

9.    On April 4, 2017, agents executed a federal search warrant at the home of TRAMION CARTER on Hawthorne Road in Hesperia, California (the "CARTER RESIDENCE").  During the search, agents found approximately 11.839 kilograms of cocaine on the floor next to the bed in the master bedroom.  During a post-arrest interview, CARTER admitted that he picked up approximately 15 kilograms of cocaine from an unknown man on March 31, 2017; he packed approximately five of those kilograms of cocaine to ship to Tennessee; and he gave the package to Jonathan Carey ("Carey") to deliver to a post office.  CARTER also admitted that, in the last several years, he packed several

3

other packages containing cocaine for shipment to various addresses in Tennessee.   CARTER said that he receives packages containing cash from Tennessee as payment for the cocaine.

## IV. STATEMENT OF PROBABLE CAUSE

10.   Based on my participation in this investigation, as well as my review of investigative reports and my conversations with other law enforcement officers who participated in this investigation, I know the following information.

### A.   April 4, 2017 Search Warrant

11.   On April 4, 2014, United States Magistrate Judge Sheri Pym signed a search warrant, in case no. ED 17-MJ-00131, authorizing the search of the CARTER RESIDENCE for evidence, fruits, and/or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) (Distribution and Possession with Intent to Distribute Controlled Substances), 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances), and 843(b) (Use of a Communication Facility in the Commission of a Drug Trafficking Offense).   A true and correct copy of the affidavit in support of that search warrant is attached as Exhibit 1 and incorporated herein by reference.   In summary and in relevant part, the affidavit sets forth the following facts:

a.   On November 30, 2016, agents intercepted a package that Carey shipped from a post office in Hesperia, California and found that it contained approximately six kilograms of cocaine.   On January 26, 2017, agents intercepted another package that Carey shipped from a post office in

4

Victorville, California and found that it contained approximately five kilograms of cocaine. Before Carey mailed the January 26 package, officers saw Carey at the CARTER RESIDENCE earlier that same day. On February 3, 2017, agents intercepted a package that was addressed to "T. Carter" at Mission Street in Hesperia, California. A drug detection K-9 positively alerted to the presence of drugs in the package, and agents found that it contained approximately $125,000 to $200,000 in cash.

b. Agents identified numerous other packages that Carey shipped from California that had similar characteristics to the packages containing cocaine and cash. On each occasion, before Carey mailed the packages, agents learned that Carey or Carey's car were at the CARTER RESIDENCE. Agents also conducted surveillance on Carey several times after he received packages that had similar suspicious characteristics. On each occasion, Carey drove the package from his house to the CARTER RESIDENCE where he met with CARTER, and CARTER then took the package inside the CARTER RESIDENCE.

**B.   Seizure of Cocaine in Tennessee on April 4, 2017**

12. On March 31, 2017, CARTER and Carey drove in separate cars to Riverside, California, where they met with an unidentified man driving a white car. Officers conducting surveillance saw CARTER take a cardboard box from the white car and put the box into Carey's car. CARTER and Carey then drove in separate cars to the CARTER RESIDENCE. Officers saw CARTER

take the box from Carey's car and take it inside the CARTER
RESIDENCE.  Carey drove away.

13.  Later that same day, at approximately 8:10 p.m., I saw
a black Nissan Titan, which is registered to CARTER and which
officers have seen CARTER driving on several occasions, exit a
shopping plaza in Yucaipa, California.  I went into a Staples
Office Supply store ("Staples") inside the shopping plaza.  A
Staples employee told me that a man who resembled CARTER
purchased one 16"x16"x16" brown cardboard box, a plastic file
box storage container, and tan scotch packing tape.

14.  About three hours later, at approximately 11 p.m.,
agents learned that Carey's car was at the CARTER RESIDENCE.

15.  On April 1, 2017, Carey mailed USPS Priority Parcel,
bearing tracking number 13130040000038724912, from a post office
in Adelanto, California to Chattanooga, Tennessee.

16.  On April 4, 2017, postal inspectors in Tennessee
intercepted the parcel that Carey shipped and opened it pursuant
to a federal search warrant.  The package contained
approximately five kilograms of suspected cocaine.  The
suspected cocaine was packaged in a cardboard box and a plastic
file box and the package was sealed with scotch tape; all of
these items were similar to the items CARTER purchased from
Staples on March 31, 2017.

**C.**   **Search of the CARTER RESIDENCE and Arrest of CARTER**

17.  During the execution of the search warrant at the
CARTER RESIDENCE on April 4, 2017, agents found approximately
11.839 kilograms of suspected cocaine on the floor next to the

bed in the master bedroom.   The suspected cocaine was wrapped in vacuumed-sealed bags inside a cardboard box.   Agents also found two guns with scratched-off serial numbers in a closet in the master bedroom.

18.   Agents arrested CARTER on April 4, 2017.

**D.   Interview of CARTER**

19.   Later that same day, after agents read CARTER his Miranda rights, CARTER said he understood those rights and agreed to speak to the agents.

20.   During the interview, CARTER said he went to Riverside on March 31, 2017 to pick up 15 kilograms of cocaine from an unidentified man.   CARTER admitted that, later that day, he bought packing supplies at the Staples in Yucaipa, and that he then packed five kilograms of the cocaine for shipment to Tennessee.   CARTER said he gave the package to Carey to deliver to the post office.

21.   CARTER also admitted that, in the last several years, he packed several other packages containing cocaine that Carey shipped to various addresses in Tennessee.   CARTER said he receives packages containing cash from Tennessee as payment for the cocaine.   CARTER said that two packages containing a total of approximately $350,000 in cash were delivered to Carey's house and another house in Hesperia, California that day, on April 4, 2017, and that the cash was intended for CARTER as payment for the cocaine.

7

### E.   Field Testing of Cocaine

22.   On April 4, 2017, Postal Inspector A. Jacobs field-tested a sample from the suspected cocaine found in the CARTER RESIDENCE, and determined that it tested positive for cocaine. The total gross weight of the cocaine, including packaging, was approximately 11.839 kilograms.

### V.   CONCLUSION

23.   Based on the foregoing, there is probable cause to believe TRAMION CARTER violated Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II) (Possession with Intent to Distribute Cocaine).

_____
ERIC FUCHS
Postal Inspector
United States Postal
Inspection Service


Subscribed to and sworn before me
this 5th day of April, 2017.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE

8